IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

SEP 29 2011

CLERK, U.S. DISTRICT COURT
by_____
          Deputy

| | | |
|---|---|---|
| ROBERT WARREN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 4:10-CV-098-A |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION
### and
### ORDER

Before the Court for decision is the complaint of plaintiff, Robert Warren ("Warren"), seeking judicial review of the final decisions of Michael J. Astrue, Commissioner of Social Security ("Commissioner"), denying plaintiff's claim for disability insurance benefits under Title II of the Social Security Act[1] and Supplemental Security Income ("SSI") disability benefits under Title XVI[2] of the Act. The Commissioner's final decisions, issued on February 25, 2009, determined that Warren was "not

---

[1] When applying for disability insurance benefits, the claimant must show he became disabled on or before the expiration of his insured status. See Barraza v. Barnhart, 61 F. App'x 917, 2003 WL 1098841, at *1 (5th Cir. 2003).

[2] When applying for SSI benefits, the first month for which SSI benefits can be paid is the month after the SSI application was filed regardless of how far back in time the disability may extend. 42 U.S.C. § 1382(c)(7); 20 C.F.R. § 416.335.

entitled to a period of disability or disability insurance benefits" for which he applied on May 3, 2007, and was "not eligible for [SSI] disability benefits" for which he also applied on May 3, 2007.[3]  On March 11, 2011, the United States Magistrate Judge issued his proposed findings and conclusions and his recommendation ("FC&R") that the decision of the Commissioner be reversed and remanded for further administrative proceedings, and gave the parties until March 25, 2011, to file objections. Although neither party filed objections, the court ordered the Commissioner to file a response to the magistrate judge's FC&R. Having now considered the filings of the parties, the administrative record, the FC&R, and applicable legal authorities, the court has decided that the decision of the Commissioner should be affirmed.

I.

### Positions Taken by the Parties and the FC&R

A.   Plaintiff's Opening Brief and Reply Brief

In his opening brief filed with the magistrate judge, Warren defined the issues presented as follows:

---

[3]  The language quoted in the text is the decision of the administrative law judge, R. at 34, which became the final decision of the Commissioner, id. at 7.

A.    Standard of Review

B.    According to prevailing Fifth Circuit precedent,
      the ALJ must cite and apply the correct severity
      standard promulgated by Stone v. Heckler, 752 F.2d
      1099, 1104-5 (5th Cir. 1985).  Did the ALJ create
      legal error when he stated the wrong severity
      standard while merely citing Stone?  If no legal
      error was committed, did the ALJ nevertheless
      create reversible error when he failed to find
      severe all the impairments which might affect
      Warren's ability to work?

C.    The opinions of a treating physician must be given
      controlling or great weight unless good cause is
      shown for discounting them or, absent contrary
      treating opinions, a specific analysis of the
      factors in 20 C.F.R. § 404.1527(d)(2) is conducted
      before rejecting them.  Did the ALJ commit
      reversible error when he failed to assign weight
      to the opinions of two treating physicians and
      failed to analyze the required factors before
      presumably rejecting the opinions?

D.    The ALJ's finding at step four regarding a
      claimant's ability to perform past relevant work
      as previously or generally performed must be
      supported by substantial evidence.  Is the ALJ's
      step four finding supported by substantial
      evidence when there is a conflict between the DOT[4]
      and Warren's description of past relevant work and
      when his documented limitations preclude
      performance of the job as he performed it and as
      it is performed in the national economy?

Pl.'s Br. at 1-2.

In the discussion section of his brief, Warren elaborated by

arguing that the ALJ, when considering his Title II application

for disability insurance benefits, "fail[ed] to use the Stone

_____

[4] "DOT" is an abbreviation for the Dictionary of Occupational Titles.

3

standard of severity in assessing Warren's impairments." Id. at
12.  He next proceeded to attack the ALJ's evaluation of his
Title XVI application for SSI disability benefits, in which he
contended that the ALJ's discounting of the opinions provided by
two treating physicians--Dr. Robert Mims and Dr. Robin McKelvey--
created reversible error.  Id. at 15.  Warren insisted that had
the ALJ properly evaluated and assigned great or controlling
weight to their opinions, there was a reasonable probability of a
different decision regarding his limitations and ability to do
work.  In his final argument, also concerning his SSI disability
benefits claim, Warren asserted that the "ALJ's finding that
Warren could perform past relevant work is not supported by
substantial evidence." Id. at 19. Warren's reply brief
reiterated each of these three arguments.

B.   Commissioner's Responsive Brief

     Commissioner responded that the ALJ, in analyzing Warren's
Title II disability insurance claim, cited Stone as controlling
and considered Warren's alleged impairments under the correct
standard.  Furthermore, Commissioner contended, substantial
evidence supported the ALJ's determinations as to the nature of
Warren's severe impairments at step two of the ALJ's five-step

analysis.[5]  As for the Title XVI SSI disability benefits claim,

Commissioner argued that the ALJ correctly refused to give

deference to the medical opinions that lacked support or

contradicted the weight of objective evidence in the record.

Moreover, Commissioner argued, substantial evidence supports the

ALJ's finding to deny benefits based on its residual functional

capacity ("RFC") determination that Warren retained the capacity

to return to his prior work as a busser.

C.    The FC&R

The recommendation of the magistrate judge was that

Commissioner's decision be reversed and that the matter be

remanded for further administrative proceedings consistent with

the magistrate judge's proposed findings and conclusions.  Remand

was ordered "to allow the Commissioner to clarify that the

Stone opinion was followed and to revisit whether other of

---

[5]  The magistrate judge correctly described the five-step analysis set forth in 20 C.F.R. §§ 404.1520 and 416.920 to determine whether plaintiff is disabled.  First, the claimant must not be presently working at any substantial gainful activity as defined in the regulations.  Second, the claimant must have an impairment or combination of impairments that is severe.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Third, the impairment or combination of impairments must meet or equal an impairment listed in the appendix to the regulations.  20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d).  Fourth, the impairment or impairments must prevent the claimant from returning to past relevant work.  Id. §§ 404.1520(e), 416.920(e).  And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience.  Id. §§ 404.1520(f), 416.920(f).  At steps one through four, the burden of proof rests upon the claimant to show he is disabled.  Crowley v. Apfel, 197 F.3d 194, 198 (5th Cir. 1999).  If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing despite his existing impairments.  Id.

Warren's impairments should have been included among Warren's severe impairments under both Title II and Title XVI at Step Two." Id. at 10.  The magistrate judge considered the issues to be decided to be:

    1.   Whether the ALJ applied the appropriate standard and properly evaluated all of Warren's impairments at Step Two;

    2.   Whether the ALJ properly evaluated the opinions of two of Warren's treating physicians; and

    3.   Whether the ALJ's finding at Step Four that Warren could perform his past relevant work is supported by substantial evidence.

FC&R at 4.

Focusing solely upon the ALJ's evaluation of Warren's claim for Title II disability benefits, the magistrate judge concluded that the first issue that he defined should be resolved in favor of Warren, apparently because it was "clear that the ALJ employed an incorrect standard" in determining whether Warren's conditions constituted severe impairments.  Id. at 8-9.  The standard to which the magistrate judge referred was the Stone standard.  The magistrate judge also concluded that "the evidence in the record does not make it clear . . . that the outcome would remain the same if the correct standard were applied."  Id. at 12.  He then discussed, but did not resolve, the issue of whether Commissioner's finding was supported by substantial evidence.

_Id._ The magistrate judge chose not to make proposed findings or conclusions as to the remaining issues, which concerned Warren's Title XVI claim for SSI disability benefits.

D.   Commissioner's Response

In response to the FC&R, Commissioner argued that the magistrate judge followed an overly strict interpretation of _Stone_, and that, when properly considered, the ALJ's opinion discloses that the ALJ adhered to the _Stone_ standard in its analysis of Warren's alleged impairments in his Title II claim. Having concluded that the ALJ applied the proper standard at step two, Commissioner argued that substantial evidence supported Commissioner's final decision.   To reinforce its position on that issue, Commissioner referred to record references and arguments made by Commissioner in its response to Warren's opening brief.

II.

Analysis

The court concludes that Warren's complaint is without merit and that the ALJ properly denied both his claims.   First, the court discusses Warren's Title II claim for disability insurance benefits, and, then, the court considers his Title XVI claim for SSI disability benefits.

A.   <u>Title II Disability Insurance Benefits Claim</u>

    1.   <u>The ALJ Used the *Stone* Standard at Step Two</u>

In deciding not to accept the magistrate judge's recommendation, the court notes that judicial review of the decision of the Commissioner of nondisability is limited to two inquiries: (1) whether substantial evidence of record supports the Commissioner's decision and (2) whether the decision comports with relevant standards.  <u>See</u> <u>Anthony v. Sullivan</u>, 954 F.2d 289, 292 (5th Cir. 1992).  The basis of the magistrate judge's recommendation of reversal and remand was that the ALJ's use of language other than the precise language used in <u>Stone</u> was insufficient to indicate that he employed the <u>Stone</u> standard of severity.

In this case, the ALJ made specific reference to <u>Stone</u> twice.  R. at 24, n.4, 33. The ALJ therefore did not overlook precedent or rely only upon the regulatory language in interpreting the standard on severity.  <u>Id.</u>

The magistrate judge nevertheless took issue with the ALJ's recitation of the proper severity standard, noting that the ALJ, when citing to <u>Stone</u> and the regulations, defined "severe" as medically determinable impairments that "have <u>more than a minimal effect</u> on a claimant's ability to perform activities of daily

8

life or basic work activities."[6]  R. at 24, n.4 (emphasis added).
The court notes, however, that the ALJ was not required to use
"magic words" in Stone to prove that he followed the proper
standard.  See Hampton v. Bowen, 785 F.2d 1308, 1310 (5th Cir.
1986) (finding that remand is only necessary "where there is no
indication that the ALJ applied the correct legal standard").
Because there is indication that the ALJ applied the correct
standard, remand is unnecessary in this case.

True, the language the ALJ used did not perfectly mirror the
language set forth in Stone: "An impairment can be considered as
not severe only if it is a slight abnormality having such minimal
effect on the individual that it would not be expected to
interfere with the individual's ability to work, irrespective of
age, education or work experience."  Stone, 752 F.2d at 1101
(emphasis added) (internal citations, quotations, and brackets
omitted).  But that does not mean the ALJ inaccurately restated
the Stone principle.  Whereas Stone defined when impairments did
not qualify as severe, the ALJ defined when impairments did
qualify as severe; the former is the definition in the negative

_____

[6] Specifically, the ALJ stated: "Severe, medically determinable impairments are those that, either singly or in combination, have more than a minimal effect on claimant's ability to perform activities of daily life or basic work activities.  The definition is the same for both the Title II and SSI programs." R. at 24 n.4 (citing to Stone v. Heckler, 752 F.2d 1099 (5th Cir. 1985), and 20 C.F.R. §§ 404.1521, 416.921) (emphasis added).

and the latter the definition in the affirmative.  This language appears again in the ALJ's findings,[7] and the court concludes that it also amounts to an accurate restatement of the <u>Stone</u> rule.  The court therefore concludes that the ALJ employed the <u>Stone</u> standard for evaluating the severity of a claimant's impairments.[8]

Moreover, as the court explains in the next section, even if the correct standard were not employed, there simply was nothing in the record that would have supported a finding of severe impairment under the <u>Stone</u> standard for the relevant time period.

2.   <u>The ALJ Did Not Error in Not Finding Severe Impairments</u>

The record supports the ALJ's step two finding as to the Title II claim that Warren did not have a severe impairment prior to the date his insurability lapsed, December 31, 2001.[9]  As the

---

[7] The ALJ found that: "There is no objective medical evidence that claimant had any impairment . . . that would have had <u>more than a minimal effect</u> on his ability to perform basic work-related activities between the alleged onset date and the date his insured status lapsed." R. at 33 (emphasis added).

[8] The magistrate judge also took issue with another statement made by the ALJ: "There is no objective evidence of any impairment that could have <u>substantially interfered</u> with claimant's ability to engage in basic work activities." R. at 24 (emphasis added).  The court agrees the statement does not reflect the <u>Stone</u> standard, but the court disagrees that the language alone establishes that the ALJ used the improper standard.  Rather, the court finds it more than sufficient that the ALJ twice correctly stated the principle in <u>Stone</u> elsewhere: in his definition of severity and in his findings that Warren's impairments were not severe.  R. at 24, 33.

[9] Warren alleges his disability began on August 1, 1996, which is also the date that he was arrested, jailed and then incarcerated for the next 11 years for drug charges.  R. at 23.

ALJ noted, for Title II purposes, Warren must establish that he
became disabled while insured for disability benefits; any
impairment that had its onset or became disabling after he met
the special earnings test cannot serve as the basis for a finding
of disability under this program.  R. at 23; see Owens v.
Heckler, 770 F.2d 1276, 1280 (5th Cir. 1985).  In other words,
the evidence that Warren offers for the period after December 31,
2001, does not count towards this determination.

The magistrate judge incorrectly found that "there is
evidence that Warren suffered from depression, HIV, Hepatitis B
and C, gonorrhea, bipolar disorder, and syphilis during" the
period "from August 1, 1996, his alleged date of disability,
through December 31, 2001, the alleged date of disability."[10]
FC&R at 12 (citing to "[R]. at 364-76").  Commissioner responded
that for the pre-December 31, 2001 relevant period, Warren did
not meet his burden to show that his allegations of a severe,
medically determinable impairment could be corroborated with
supporting, objective evidence.  See 42 U.S.C. § 423(d)(5)(A); 20
C.F.R. §§ 404.1512(a), 404.1529(a); Anthony, 954 F.2d at 295-96

---

[10] In support of this statement, the magistrate judge cited to medical records for Warren's visits
with the Fort Worth Preventive Medicine Clinic dated between July 24, 1991 and October 25, 1991.
FC&R at 12 (citing to R. 364-76). As discussed infra, those records do not support a finding that there is
evidence that Warren suffered from all of the listed impairments during the relevant time period.

(holding that claimant failed to meet burden to show severe impairment where his subjective complaints of pain were unsubstantiated by objective medical findings).

The court agrees with Commissioner that medical evidence of a disabling impairment does not exist for the pre-December 31, 2001 period.  Because Warren's earnings record shows that he last met the Title II disability insured status requirements on December 31, 2001, he must prove that his disability period began between August 1, 1996, and December 31, 2001.  See R. at 23. Any evidence of an impairment after December 31, 2001, cannot be used to show Warren's entitlement for Title II disability insurance benefits.

The only evidence offered before December 31, 2001, goes to Warren's HIV and depression.  As the ALJ noted, the earliest records show that Warren was followed at the Fort Worth Preventive Medicine Clinic in 1991 for HIV and depression.  R. at 24, 364-76.  At that time, he was working, and the registered nurse noted that he was "doing quite well," with no significant changes in health and complaints.  R. at 24, 367.  While Warren complained of gonorrhea, syphilis, and hepatitis in the past,

none of these ailments were diagnosed during the 1991 visit.[11]
R. at 364-65, 374-75.  The only conditions corroborated during
the visit were HIV and depression.  Id.  Warren then failed to
return for a follow-up visit, R. at 367, and a gap in medical
history followed.

The remaining medical evidence in the record all fall after
December 31, 2001.  The next record was on January 15, 2005, from
the Texas Department of Criminal Justice, Institute Division
(TDCJ), but that visit revealed nothing about his pre-December
31, 2001 health.  R. at 24, 465-66.  Records from a visit dated
March 8, 2005, did show that Warren was diagnosed with Hepatitis
C in 1994,  R. at 405; however, Warren provided no objective
evidence regarding his impairments and their effect on his
ability to perform basic work activities before the date his
insured status lapsed on December 31, 2001.

In fact, as the ALJ observed, there was probative evidence
that showed Warren could work during the relevant period.  See R.
24.  A claimant's daily activities may be appropriately
considered when deciding the claimant's disability status.  See
Leggett v. Chater, 67 F.3d 558, 565 n.12 (5th Cir. 1995).  On

---

[11] The medical records show that Warren was not tested for gonorrhea or hepatitis, and
his syphilis lab test was returned as "nonreactive."  R. at 374-75.

June 27, 2007, in a psychological examination with Dr.
Christopher Anagnostis, Warren reported that between 1997 and
2007 (while he was incarcerated), his prison jobs included
working in a furniture factory, the prison laundry, and the
field.  R. at 24, 572.  Warren also reported that before prison,
he primarily worked janitorial jobs.  R. at 572.  Based on the
information in the record, the ALJ correctly concluded that
Warren's work activity does not support a finding that Warren had
potentially disabling impairments during the relevant time
period.  R. at 24.

The ALJ further noted that the extended gap between the
alleged onset date of August 1, 1996, and the date of
adjudication "presented a logistical problem":

> It is difficult to obtain distant medical records
> from institutions such as TDCJ, and, because of the
> passage of time, the more recent records cannot address
> [Warren's] condition as it existed before his Title II
> insurance status lapsed.  Because there is no objective
> medical proof of any disabling impairment(s) in the
> distant critical period, [the ALJ could] not find that
> [Warren] suffered from severe impairments before
> December 31, 2001.

R. at 24 (internal citation omitted).

Thus, the fact that Warren potentially suffered from
disabling impairments after the December 31, 2001 date held no
relevance to the determination for a Title II claim for

disability insurance benefits.  The ALJ was correct to not rely on medical records addressing his conditions after the relevant period.

The court therefore agrees that Warren did not meet this burden to show that his impairments were severe during the pre-December 31, 2001 period.  Accordingly, the court affirms the ALJ's decision with respect to its finding that Warren was not entitled to recover under his Title II claim for disability insurance benefits.

B.   Warren's Title XVI SSI Disability Benefits Claim

    1.   No *Stone* Problem is Present

As the discussion under II.A.1 demonstrates, the ALJ understood and correctly used the Stone standard.  But there is another reason why there is no Stone issue as to the SSI disability benefits claim.  When evaluating Warren's application for Title XVI SSI disability benefits, the ALJ did not stop at the step two severity analysis but instead proceeded through steps three and four.  R. at 33-34.  The Fifth Circuit has said that any Stone complaint becomes irrelevant where the ALJ's analysis proceeds past step two.  See Jones v. Bowen, 829 F.2d 524, 526 n.1 (5th Cir. 1987) (rejecting claimant's argument concerning Stone where the ALJ's analysis proceeded to steps four

and five of the analysis); <u>Chapparo v. Bowen</u>, 815 F.2d 1008, 1011

(5th Cir. 1987) (per curiam) (rejecting claimant's argument

concerning the proper standard <u>Stone</u> where the ALJ's analysis did

not end at step two, but proceeded to step four).

The ALJ in <u>Stone</u> found against the plaintiff at step two of

the five-step analysis and concluded that the plaintiff did not

have a severe impairment. <u>See Stone</u>, 752 F.2d at 1100.  Unlike

<u>Stone</u>, the ALJ here found in favor of Warren at step two and

concluded that Warren "has had severe impairments" as of May 3,

2007. R. at 33.  These included "bipolar disorder, antisocial

personality disorder, asymptomatic [HIV], and asymptomatic

hepatitis A, B and C."  <u>Id.</u>  Then proceeding to step three, the

ALJ concluded that Warren is "overweight and has degenerative

joint disease, but he has not had an impairment or combination of

impairments that are listed in, or that equal in severity in

impairment found in" the regulations.  <u>Id.</u>  At step four, the ALJ

considered Warren's physical and mental RFC and concluded that

Warren retained the capacity return to his prior work as a

busser.  R. at 32-34.

Therefore the ALJ's analysis "did not turn on whether or not

[plaintiff's] impairment was severe, but on whether [plaintiff]

could return to his past relevant work--an inquiry unaffected by

the test set forth in Stone." Chaparro, 815 F.2d at 1011.

Whether or not the ALJ applied the correct severity standard, he proceeded through the remaining steps of the analysis after finding in favor of Warren at step two.   As in Chaparro, the ALJ's determination rested on an inquiry "largely unaffected by the test set forth in Stone," id., thus rendering that argument irrelevant to the disposition of Warren's case.

   2.   Claims of Obesity and Degenerative Bone Disease

   Warren next argues that had Stone been properly followed, the ALJ would have considered evidence of his obesity and degenerative joint disease in its step two analysis and concluded that these impairments were severe.[12]

   As to his obesity claim, the ALJ found that Warren was overweight, R. at 31, but the record contained no medical opinion verifying that Warren had any work limitations specifically due to obesity.   Evidence that Warren underwent nutrition therapy, for example, did not indicate that his weight interfered with his ability to work.   R. at 671-72, 859, 932.

   As to his claim of degenerative bone disease, the record likewise contains no medical opinion verifying that Warren's

_____

[12] While Warren's opening brief does not state what claim is related to his allegations of obesity and degenerative bone disease, his reply brief clarifies that these allegations relate to his Title XVI claim for SSI disability benefits.  See Pl.'s Reply Br. at 4-5.

ability to work was limited specifically by this affliction.   In
2007, Warren even informed his doctor that he exercised for one
hour a day doing sit-ups and jumping jacks.  R. at 30, 574.
Although in 2008 he was prescribed a cane for a fall, R. at 764,
the ALJ observed that Warren "remain[ed] independently mobile,"
and found no supporting evidence or history of a vertebrogenic
disorder or problems with weight-bearing joints.  R. at 31.

Without objective medical evidence, the ALJ could not
corroborate Warren's claims that his obesity and degenerative
joint disease interfered with his ability to work and were
therefore severe impairments.  See <u>Vaughn v. Shalala</u>, 58 F.3d
129, 131 (5th Cir. 1995) (per curiam) (claimant's allegations
could not be corroborated where no physician ever stated that the
claimant experienced symptoms that would preclude work); <u>see also</u>
<u>Hames v. Heckler</u>, 707 F.2d 162, 165 (5th Cir. 1983) (claimant's
allegation of the mere presence of some impairment does not show
he is disabling per se but must be supported by evidence that he
was precluded from working).  Thus, the court concludes that
Warren cannot show that the ALJ erred in not finding that his
alleged obesity and degenerative bone disease were severe
impairments.

> 3.   <u>Substantial Evidence Supports the ALJ's Step Four</u>
>      <u>Finding</u>

Substantial evidence in the record supports the ALJ's decision regarding Warren's Title XVI SSI disability benefits claim.[13]   The court now considers Warren's arguments concerning this issue.   Warren argues that the ALJ's assessment of the RFC at step four is not supported by substantial evidence, because the ALJ (a) failed to properly consider statements from his treating physicians and (b) failed to consider all of Warren's impairments or to consider his description of his prior work experience.

The court, upon consideration of Warren's arguments, concludes that they are devoid of merit.

### a.   The Opinions of Dr. Mims and Dr. McKleavey

The record reflects that the ALJ considered the opinions of Warren's treating physicians, but found their opinions to be inconsistent with the objective medical evidence in the record.[14]

_____

[13] Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the decision. See Richardson v. Perales, 402 U.S. 389, 401 (1971). "[N]o substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988) (per curiam). Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the decision. Richardson v. Perales, 402 U.S. 389, 401 (1971). "[N]o substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988) (per curiam).

[14] Warren argues that under Newton v. Apfel, the ALJ must consider the six factors established in 20 C.F.R. §§ 404.1527(d), 416.927(d) before discounting the weight of his treating physicians' opinion. See 209 F.3d 448, 446 (5th Cir. 2000). In Newton, the ALJ had summarily rejected the opinions of the treating physician, based only on the testimony of a non-specialty medical expert who had not examined the claimant, and there was no "competing first-hand evidence" to support the ALJ's

Although a treating physician's opinions are generally given considerable weight, such opinions may be given "little or no weight" when good cause exists. See Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir. 1994). As relevant here, good cause includes statements "not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence." Id.; see also Martinez v. Chater, 64 F.3d 172, 176 (5th Cir. 1995) (per curiam) ("The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.") (internal citations and brackets omitted). Additionally, an opinion that plaintiff was disabled is entitled to no weight, as that determination is reserved to the Commissioner. See Frank v. Barnhart, 326 F.3d 618, 620 (5th Cir. 2003) (holding that a physician's opinion that a claimant is "disabled" or "unable to work" is not the type of doctor's opinion given any "special significance"); Tamez v. Sullivan, 888 F.2d 334, 336 n.1 (5th Cir. 1989).

Dr. Mims, a treating physician, reported that Warren was "disabled due to chronic recurring mood swings, psychosis, and HIV disease." R. at 622. The ALJ found Dr. Mims's observations to be problematic, however, because Dr. Mims did not refer to any

_____

decision. The court disagrees that Newton applies in these circumstances.

diagnostic test, clinical test or clinical observation; nor did

he attempt to quantify Warren's actual functional capacities.  R.

at 29.  Furthermore, Dr. Mims's observations were unsupported by

the record as a whole, especially when contrasted with the

evaluations offered by other doctors, including those from state

agencies.

For example, Dr. Robert White, a state agency psychologist,

opined that Warren could understand, remember, and act on simple

instructions, concentrate for extended periods, interact

adequately with co-workers and supervisors, and respond

appropriately to changes in a routine work setting.  R. at 593.

This assessment was affirmed by another state agency

psychologist, Dr. Charles Lankford.  R. at 667.  Other

consultative or examining sources likewise found that Warren

maintained good attention and concentration, showed good

listening and comprehension skills, and had normal thought and

speech content processes.  R. at 27, 570.  The ALJ was therefore

correct in refusing to accord Dr. Mims's opinion any special

significance.

Dr. McKelvey's opinion also suffered from the same problems

as Dr. Mims's opinion.  Dr. McKelvey opined that Warren was

unable to function on a daily basis and complete activities of

daily living. R. at 877. However, Dr. McKelvey's opinion was

not supported by other evidence, such as Warren's medical and lab

tests, which all had stable or normal results. R. at 31, 760-99,

853-73, 863-65 (showing normal CT scan and pulmonary diagnostic

test results). The ALJ agreed with the state agency's

assessments instead because the evidence did not support Dr.

McKelvey's opinion that Warren had incapacitating physical

impairments. R. 31, 595-602. This practice is well accepted: An

ALJ can accept a better supported non-examining physician's

opinion over the opinion of a treating physician. See Oldham v.

Schweiker, 660 F.2d 1078, 1085 (5th Cir. 1981). On this point as

well, the court agrees with the ALJ's decision to minimize the

weight given to Dr. McKelvey's opinion.

      b.   Warren's Residual Functional Capacity and Ability
          to Work as a Busser

Warren next argues that the ALJ's step four finding is not

supported by substantial evidence, because he has documented

limitations on his ability to perform a busser's duties, and

because there is a conflict between the Dictionary of

Occupational Titles' (DOT) general description and Warren's

description of past relevant work. The ALJ made the following

step four findings and conclusions that resulted in his decision

that Warren was not eligible for SSI disability benefits:

10.  Since May 03, 2007[,] claimant has retained the exertional capacity for the sustained performance of a full range of medium work activity.  There are no other physical limitations or restrictions.

11.  Since May 03, 2007, claimant has these sustained work-related mental limitations: he is restricted to non-complex, simplistic tasks that do not require independent judgment and he must work with things rather than people.

12.  Claimant's past relevant work as a busser does not require the performance of work activities precluded by the above limitations.

13.  Claimant was not under a disability, as defined in the Social Security Act, at any time through December 31, 2001, the date he last met the Title II disability insured status requirements.

14.  Claimant has not been disabled, as defined in the Social Security Act, at any time between May 03, 2007 and the date of this decision.

R. at 33-34 (internal citations omitted).

The court is satisfied that there is substantial evidence to support the ALJ's assessment of Warren's RFC, and that the ALJ properly considered all evidence before him in making his findings and conclusions and reaching his decision.

First, there was evidence that Warren retained the physical capacity to return to his busser position.  With respect to Warren's degenerative disc disorder, the ALJ noted that there was no indication that Warren required HIV medication or experienced intractable pain, such as disuse muscle atrophy or premature

aging.  R. at 31.  Additionally, there was no objective medical evidence to confirm Warren's subjective complaints of nausea, constant diarrhea, and fatigue that would allegedly prevent him from working a forty-hour work week.  R. at 26-29, 32.  As stated previously, the ALJ observed that Warren "remain[ed] independently mobile."  R. at. 31.  The ALJ also concluded, based on the testimony of the vocational expert, that if Warren had to use a cane, the cane would impose some interferences on his job but ultimately would not prevent him from carrying out the essential duties of a busser.  R. at 32.

Second, there was substantial support for the ALJ's RFC assessment and finding that Warren retained the mental capacity to perform his past relevant work as a busser.  R. at 32, 33.  In reaching this conclusion, the ALJ noted that Warren did not require psychiatric in-patient care or frequent, intensive out-patient counseling; he was not the subject of court-ordered mental health proceedings; and he had no record of social isolation, gross emotional irregularities or cognitive limitations, or frequent bizarre or harmful behavior.  R. at 30. Furthermore, as the ALJ noted, the vocational expert testified that Warren's past work as a busser could be performed, even

despite the reasonable limitations that Warren had on his ability to work.  See R. at 32, 99; Vaughn, 58 F.3d at 132.

Finally, despite Warren's allegations to the contrary, there is no actual conflict between the DOT's description of "bus person" and Warren's description of his job.  Warren claims there is a discrepancy as to whether he was a "bus person" or "dining room attendant," Pl.'s Br. at 20, n.13, but the testimony at the hearing never discussed any of his work as a dining room attendant.  R. at 97-98.  Warren merely testified he performed "very little" work as a "line attendant," which is not the same thing.  Id.  Ultimately, the vocational expert concluded that the line attendant work was insignificant, R. at 98, and the ALJ excluded the position from Warren's past relevant work.  R. at 31.

In all, the record shows that the ALJ considered all of Warren's impairments, and noted his complaints, but noted that his testimony and other statements concerning his complaints "were not credible or reasonably supported by the objective medical evidence."  R. at 33.  The court concludes that the ALJ did not err in making his RFC finding that Warren could sustain work at the determined level.  20 C.F.R. §§ 404.1545(b), (c), 416.945(b), (c).  The court has no reason to disbelieve the ALJ when he said "I have considered the complete medical history

consistent," R. at 23, and when he introduced the findings set
forth above with the statement that the findings were made
"[a]fter careful consideration of the entire record," R. at 32.
Accordingly, the court affirms the ALJ's decision with respect to
its finding that Warren was not entitled to recover under his
Title XVI claim for SSI disability benefits.

### III.

### Conclusion and Order

To whatever extent the findings and conclusions of the
magistrate judge are inconsistent with this memorandum opinion
and order, they do not meet with the court's approval. The
findings and conclusions of the magistrate judge that are
consistent with this memorandum opinion and order are approved.
The court concludes that the recommendation of the magistrate
judge should be rejected, and that Commissioner's decisions
should be affirmed.

Therefore,

The court ORDERS that the decisions of Commissioner that Warren was not entitled to a period of disability or the disability insurance benefits under Title II of the Social Security Act for which he applied on May 3, 2007, and that he was not eligible for the Supplemental Security Income disability benefits under Title XVI of the Act for which he applied on May 3, 2007, be, and are hereby, affirmed.

SIGNED September 29, 2011.

JOHN McBRYDE
United States District Judge